***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good ground to reconsider the evidence; and having reviewed the competent evidence of record, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Taylor and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. October 16, 2002 is the date of the alleged injury in this claim.
2. On October 16, 2002, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On October 16, 2002, an employer-employee relationship existed between the parties.
4. On October 16, 2002, defendant-employer employed three or more employees.
5. Employers Mutual Casualty Company is the carrier on the risk.
6. Plaintiff's average weekly wage as determined by a Form 22 was $413.17, yielding a compensation rate of $275.45.
7. The parties stipulated into evidence as Stipulated Exhibit 1 a packet of records including medical records, discovery, Employment Security Commission records, Industrial Commission forms and I.C. File No. 827863 forms.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 39 years old. Defendant-employer employed plaintiff to install blinds, awnings, and carpet. Plaintiff worked for defendant-employer since 1996.
2. In 1998, plaintiff suffered a compensable injury when he fell from a ladder while in the course and scope of his employment with defendant-employer. Plaintiff sustained severe injuries to his right foot and lesser injuries to his left foot. Plaintiff also broke his left elbow and developed some back pain. Plaintiff was assigned permanent partial disability ratings to both lower extremities and his left arm, but not to his back.
3. The 1998 workers' compensation claim (I.C. File No. 827863) was settled.
4. Plaintiff returned to work for defendant-employer and continued to work without interruption. Defendant-employer's attendance records indicate that plaintiff did not miss any time from work due to back pain prior to April 18, 2002.
5. In the spring of 2002, plaintiff strained his back installing windows while at work. A few days later, plaintiff took a car trip to Florida. Plaintiff experienced considerable pain while sitting in the car for an extended period of time.
6. On April 19, 2002, plaintiff sought medical treatment from his family doctor, Dr. Thomas M. Whyte, for his back strain. Plaintiff indicated to Dr. Whyte that he had been on a car trip to Florida, but did not mention that he strained his back while installing windows at work. On May 13, 2002, Dr. Whyte ordered an MRI, which showed bulging discs. Dr. Whyte referred plaintiff to Dr. Michael Applegate, neurologist. Plaintiff was able to continue performing his regular job duties during this time.
7. Dr. Applegate noted plaintiff had mild bulges at L4-5 to the left and L5-S1 to the right. Dr. Applegate recommended a course of three epidural steroid injections. The injections allowed plaintiff to work without interruption for defendant-employer.
8. On October 16, 2002, defendant-employer received a truckload of carpet rolls. Defendant-employer was short-handed and it was left to plaintiff and defendant-employer's owner, Alan Pugh, to unload the carpet with the assistance of the delivery truck driver. While lifting one end of one of the carpet rolls, plaintiff had a significant amount of pain in his lower back. Plaintiff told Mr. Pugh that he had more lifting that he could handle. Despite the pain in his lower back, plaintiff did not immediately seek medical treatment.
9. A few days later, plaintiff moved his teenage daughter to Georgia. During the course of the long drive to and from Georgia, plaintiff again experienced an increase in the amount of his back pain.
10. On October 31, 2002, plaintiff saw Dr. Applegate and complained of low back pain following a drive to Valdosta, Georgia. Dr. Applegate noted that between the nine-hour drive to Georgia and helping his daughter move, plaintiff injured his hand and exacerbated his low back pain. Dr. Applegate's records do not indicate that plaintiff informed him that he re-injured his back on October 16, 2002 while unloading carpet at work.
11. On November 15, 2002, plaintiff had a lumbar myelogram, which revealed a change at the level of L5-S1. Plaintiff then had a CT myelogram, which indicated disc bulging at the L5-S1 level with superimposed right paracentral to right foraminal disc protusion as well as a central inferiorly extruded disc fragment. Dr. Applegate referred plaintiff to a neurosurgeon.
12. On December 19, 2002, Dr. Russell Amundson, neurosurgeon, recommended surgery as a result of plaintiff's symptoms. On February 12, 2003, Dr. Amundson performed a bilateral L5 decompressive laminectomy, bilateral L4 laminotomy, foraminotomy at L4-5, L5-S1, and a left L4-5 and right L5-S1 microdiskectomy.
13. Plaintiff was released to light duty work on March 12, 2003. Defendant-employer had already terminated plaintiff because of his extended absence for surgery. Defendant-employer did not offer plaintiff any work within his restrictions.
14. On April 24, 2003, Dr. Amundson released plaintiff to work at a medium capacity job. Plaintiff has not returned to work.
15. Plaintiff filed a Form 18 on December 12, 2002. Defendants did not file a Form 19 until January 27, 2003. Defendant's Form 19 is signed by Mr. Pugh. Mr. Pugh's statement on the Form 19 is that "Myself and Greg was [sic] adjusting carpet rolls on truck to be unloaded. Greg mentioned a twinge in back. He continued to move carpet and work that day, and rest of work week." The Form 19 indicates this occurred on October 23, 2002, not on October 16, 2002. The Form 19 indicates that plaintiff worked the rest of the week and did not return to work thereafter. Defendants did not file a Form 61.
16. On January 27, 2003, plaintiff filed a Form 33 alleging that defendants failed to comply with Industrial Commission Rule 601, which requires defendants to accept or deny a claim within fourteen days of notice to the claim.
17. Defendants filed a Form 33R on February 28, 2003, stating for the first time that they were denying the claim because "Insufficient evidence exists that an injury by accident occurred, that any disability resulted, or that medical treatment is required for same."
18. Plaintiff's records from the North Carolina Employment Security Commission Unemployment Insurance Division reveal that on December 16, 2002, plaintiff filed for unemployment benefits, stating the reason for separation was "lack of work." Plaintiff indicated that he was willing to accept suitable work and that he had no restrictions from work. The records show that plaintiff received unemployment benefits in the amount of $237.00 per week from December 23, 2002 through February 8, 2003 and March 12, 2003 through September 1, 2003.
19. Because plaintiff drove a long distance and helped his daughter move days after the October 16, 2002 lifting incident, expert medical testimony was necessary to determine the cause of plaintiff's back condition. No doctor was deposed and the record contains no medical evidence causally relating plaintiff's back pain to the incident lifting carpet on October 16, 2002. Therefore, plaintiff has failed to prove by the greater weight of the medical evidence that he sustained an injury by accident resulting in an injury to his back on October 16 or October 23, 2002.
20. Plaintiff did not file a workers' compensation claim for the onset of pain related to installing windows in the spring of 2002 and therefore this incident is not before the Full Commission.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving that his injury resulted from an accident arising out of and in the course of his employment. Morrisonv. Burlington Industries, 304 N.C. 1, 13, 282 S.E.2d 458, 467 (1981). "There must be competent evidence to support the inference that the accident in question resulted in the injury complained of, i.e., some evidence that the accident at least might have or could have produced the particular disability in question." Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). In Click, the court further held that medical testimony was required "to provide a proper foundation for the Commission's finding on the question of the injury's origin."Id. at 169.
2. In the present case, plaintiff did not present any competent medical testimony to prove plaintiff's injuries were causally related to the work related incident on October 16, 2002. As such, on October 16, 2002, plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be DENIED.
2. Each side shall pay its own costs.
This the 14th day of July 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER